Mr. Justice CATRON
 

 delivered the opinion of the court.
 

 By the act of 21st of April, 1792 there was granted to Rufus Putnam and others, known as the Ohio Company, one hundred thousand acres of land in the Marietta district, in the territory northwest of the Ohio river. The object of Congress and the grantees seems to have been to cause the country to be inhabited by making donations, through the company, to actual male settlers, of one hundred acres each;-and all of the tract not thus disposed of within five years from the date of the grant, reverted, by its terms, to the United States, as public lands. The ordinary laws for surveying by ranges, townships, and sections, did not apply to this tract, nor to the surplus that might revert, as ordinary surveys would have thrown the townships and sections into fractions, by the hundred-acre lots previously disposed of by the company.
 

 By compact, the United States stipulated to give to the State of Ohio one thirty-sixth part of the public lands in that State, for the use of schools; and the 16th section of each township was the land thus contracted to he given, in .cases where there were regular surveys in townships of six miles square; and, by the acts of April 80,1802, and March 3,1803, (sec. 3,) Congress further stipulates that the lands previously promised “for the use. of schools, in lieu of such of the sections number sixteen as have been otherwise disposed of, shall be selected by the Secretary of the Treasury, out of the unappropriated reserved sections in the most contiguous townships.”
 

 By the act of March 18, 1818, Congress directed the' lands .in the Ohio Company’s donation tract to be surveyed by the surveyor general, separating that .conveyed to settlers from that not'conveyed, and belonging to the United States by reversion. This latter land he was to lay off into townships and sections, or into one-hundred-acre lots, conforming them to the
 
 *279
 
 plan observed by the company, when providing for actual settlers. And he was ordered to make returns of the surveys to the .General Land Office, and to the register of the land office at Marietta. • The lands were laid off into one-hundred-aei’P tracts, and these tracts the act orders to be
 
 sold,
 
 “
 
 with the exception 'of the usual proportion for the support of schools.”
 
 By the President’s proclamation, they were offered for sale on the first Monday in June, 1819. ' There was no reservation to the general order of sale, except of such lands as the Secretary should select, according to the power vested in him by the act of 1803, for the use of schools; and it is a fair presumption, that the register offered all the lands for sale that were not reserved. But the difficulty is; that for the lands in dispute there might have been no bidder when they were offered. That the Secretary had the power to reserve school lots, and to biud the United States and the townships to his selection, is very clear; and we think it is equally clear that the register of the Marietta district had no power to designate these school lots. As a subordinate, he could lawfully record the orders of the Secretary in this respect, but could do no binding act himself..
 

 Six of the lots of one hundred acres each, lying in a body, and square form, together with-lot No. 34, adjoining on the east, were not sold, (including No. 8, the lot in dispute.)
 

 ■ On the tract book found in the office of the register at Marietta, and by which the sales of 1819 were governed, the word “school” was written on the plot of each of the seven lots; . but whether made as early as 1819, or afterwards, does not appear; nor, whether thé then register (Wood) put the designation there by order of the Secretary.
 

 It is.admitted that the school commissioners took possession of the land sued for in 1834, and have held it ever since by their lessee; and it is also admitted that township nine, range eleven, which claims the lots' marked “school,” is without school lands, unless the lots thus designated belong to it as such. ' •
 

 On the returnmade of the surveys to the General Land Office in. 1818, there, is no indication that a, reservation of any land was'made for tbwfiship nine; range eleven.
 

 
 *280
 
 The- manner in which the Secretary should authenticate his selections was not prescribed by Congress, and depends in this case on eyidence not found of record. It must be proved by circumstances, and cannot be proved in any other way.
 

 Another consideration is pressed on the court, on the part of the plaintiff, to overcome the fact that this designation is of no value, to wit: that the Secretary of the Treasury, by his letter of July 13, 1805, directed land equal to one section'on the southern part of the donation tract to be laid off as compensar tionj for section sixteen, in township five, range ten, the school tract in township five having been otherwise appropriated; and hence it happened, as is alleged, that the register marked the lots in controversy “school.” In 1805, the lots thus marked had not been surveyed, and each one-hundred-aere lot-is marked on the tract book of surveys returned in 1818; and as the trustees took the school land for township five, range ten, elsewhere, the argument has not much force.-
 

 It is also insisted that, in point of fact, the entire section No. • 16, in township nine, range eleven, remained undisposed of by the Ohio Company, and was subject to be appropriated by the ' commissioners of the township for school purposes; and, therefore, no claim could be set up by them to lands elsewhere. The ' act of April 30th, 1802, section 7, provides that the 16th section of every township shall be granted to the inhabitants of the samé for the use of schools; ' But, then, the 16th section is á designated portion of land that
 
 may
 
 result from an execution of the public surveys made by the United States, according to the rules and regulations Congress had made-or might make. Until ranges were established, and the lands surveyed into townships and sections, no title to any definite land vested in the township. It had no authority to survey and • ascertain the 16th section. This authority was reserved exclusively to the United .States, and to be exercised as part of the political power. Now, as the 16th section of township nine, range eleven, never was legally ascertained, and as no other eyidence could be heard to-fix its identity than a survey approved by the department, established for the distribution and sale of the public lands, the assumption that the
 
 *281
 
 land was unappropriated where the 16th section would have fallen, had a survey in fact been made of the township, amounts to nothing. Cases affecting school lands, in Ohio and elsewhere, come under the rule laid down in the noted case of General Green’s grant of twenty-five thousand acres, in the military district of North Carolina, (2 "Wheat., 19.) The Legislature of that State made the grant by an act of Assembly; having made it, it reserved the power to locate the land by survey through its officers. The land being surveyed, and ' the survey returned and recorded in the proper land office, it was held by this court ’ that the title attached to the land designated, on the obvious legal ground that the .State of North Carolina was estopped to disavow its own act in defining .by survey the precise land granted; and so, also, General Green and his heirs were estopped to call in question the validity .of the definite location, the authority to locate by survey having been reserved by the granting power. So, here the granting power reserved the right to ascertain and identify the land granted to the schools. Until this was done, no title could be taken of any particular tract; and when the location was made by authority of the United States, each party was estopped to. deny its binding force. It was, in fact,
 
 a title
 
 by mutual estoppel.
 

 We now come to the precise case presented on the trial be low. The jury were instructed :
 

 1. “ That the proofs and legal presumptions sustaining the title of the defendant must have reference solely to, and be based upon, the act of Congress, approved March 18, 1818, entitled ‘An act providing for the sale of certain lands in the .district of Marietta,’ &e., in connection with the act of the 21st of April, 1792, granting to Rufus Putnam and others, as agents and trustees, one hundred thousand acres, called the donation tract; and that, in the absence of any express authority to any other officer to make the selection of school lands in said donation tract, by a fair construction of said act of 1818, the register of the land office at Marietta rightfully exercised such authority.”
 

 2. “ That all the evidence and admissions of facts in the
 
 *282
 
 case raised a legal presumption that the., said register of the land office at Marietta had exercised the authority so vested in him by said act of March 18, 1818, prior to the entry and patent under which the plaintiff claims title, by legally selecting the lands in controversy in this suit (with other lands) for the support of schools in said township nine, in range eleven, and it was therefore their duty to return a'verdict for the defendant.”
 

 The first instruction assumes that the act of 1818 authorized the register to select the school lots in the donation tract; whereas the third section of the act of March 3, 1803, conferred the exclusive power on the Secretary of the Treasury, and therefore the instruction is erroneous.
 

 The second instruction declares that the evidence and admissions of facts in the case raised a
 
 legal
 
 presumption “ that said register had exercised the authority vested in him by the act of 1818, prior to the entry and patent under which the plaintiff claims title,” &c.
 

 As the register had no power to select, it could not-be held that he had legally selected; nor did he make the entry on the tract book in due form, had he been instructed by the Secretary to record his selection.
 

 The word “ school,” appearing on the tract book, has much significance; but, standing alone, it did not authorize the Circuit Court to presume, as matter
 
 of
 
 law, that the lands had been selected by order of the Secretary. If his letter to the register, directing him to make the selection; had been produced, and taken in connection with the designation, then we think the court would have been warranted in making the legal presumption.
 

 The narrow point in this cause is,. Did the Secretaty seleet the land in controversy (with other lots) for the use of schools ? If he did, then the title of the United States was divested thereby, and the lands withdrawn from sale. There are numerous facts tending to prove that they were selected. 1st. They were not sold, nor is -it at all probable that they were offered for sale, in' 1819. If they are of good quality, and favorably situated, a jury may be satisfied that, had they been
 
 *283
 
 offered to bidders at the public sale, they would have been purchased.- 2d. They were claimed as school lands, selected for township nine, range eleven. 3d. The trustees for the township took- possession of them, and leased them out as' early as 1834; and their tenant is yet in possession, and here' sued. 4th. The endorsement, on the plat of the lots, of the word “school,” indicates, to some extent, that- they had been selected by the proper authority. What weight this may have, it will be proper to leave to the jury. 5th. That this township had no school lands assigned to it, unless the lots referred to were assigned.
 

 These facts, with‘others, were proper to be submitted to tlie jury, from which they might have presumed that the lots had been duly selected.
 

 In the language of the Supreme Court of Ohio, in the case of Coombs and Ewing
 
 v.
 
 Lane—“Eacts presumed are as effectually established as facts proved, where no presumption is allowed.” That was a suit for the possession of this same land, and involved the same evidence this case does, and presented the sanie questions of law. But there, the cause was submitted to the Circuit Court on the law and the facts, without the intervention of a jury; and the Supreme Court was appealed to in order, to reverse the opinion of the lower court, on a motion for a new trial. The State courts dealt with both facts and law; whereas, here, the jury must deal with the facts and presumptions, under the instructio'ns of the .court, as respects the law.
 

 We order the judgment of the Circuit Court to be reversed, and remand the cause for another trial.